No. 22,791.

W. C. SHANK, as Administrator, Etc., and THE ABBOTT COAL COMPANY, *Appellants*, v. THE FRANKLIN COAL COMPANY, *Appellee*.

SYLLABUS BY THE COURT.

CONTRACT—*Subsurface Coal Mining—Estate in Lands—Termination of Contract*. Where the owners sold and conveyed the coal in place underlying a farm and granted surface trackage rights, also rights of ingress and egress, and the right to construct mining facilities "for such period of time as the grantee may require to remove the coal under said land," and gave the grantee the right to remove all mining equipment "whenever said coal is mined, or at the expiration of this agreement"; and the contract concluded with the further stipulation:

"It is further agreed by and between the parties hereto their heirs and assigns that this contract shall cease and be determined, and all of the rights of the said second parties their heirs or assigns thereunder or hereby acquired, shall terminate and determine at the expiration of twenty years from the date hereof. That said second parties their heirs or assigns shall give quiet and peaceable possession of said premises and every part thereof at the expiration of the time herein stated unto the said first parties their heirs or assigns,"

it is held that the sale and conveyance of the coal was a grant of a limited estate of twenty years' duration, defeasible as to any coal not mined within the time limit fixed by the contract.

Appeal from Crawford district court; ANDREW J. CURRAN, judge. Opinion filed July 10, 1920. Affirmed.

*J. J. Campbell, John P. Curran,* and *Hal Curran,* all of Pittsburg, for the appellants.

*Arthur Fuller,* and *W. J. True,* both of Pittsburg, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This lawsuit involves the rights of senior and junior grantees of subsurface estates in coal lands in Crawford county.

In 1895, the owners of the fee sold and conveyed the coal in place under their farm to plaintiff's original assignor. The contract of the parties recited that the grantors had sold to the grantee all the coal underlying the land in question. It recited the consideration, $1,900; detailed the terms of payment; provided for retention of title until payment was completed; and provided for a forfeiture for failure of payment. It provided for surface trackage rights, also rights of ingress and egress, and the right to construct mining facilities on the land "for such period of time as he [grantee] may require to remove the coal from under said land." It also provided that the grantee, his heirs and assigns, were privileged to remove all the mining equipment "whenever said coal is mined, or at the expiration of this agreement." It recited also that the grantee "shall properly prop and leave sufficient pillars in said mine which shall be left standing at the expiration of this contract, to protect the surface of said land from caving." The concluding paragraph of the contract reads:

"It is further agreed by and between the parties hereto their heirs and assigns that this contract shall cease and be determined, and all of the rights of the said second parties their heirs or assigns thereunder or hereby acquired, shall terminate and determine at the expiration of twenty years from the date hereof. That said second parties their heirs or assigns shall give quiet and peaceable possession of said premises and every part thereof at the expiration of the time herein stated unto the said first parties their heirs or assigns."

Some time after the expiration of the twenty years specified in the contract, the defendant bought the property from the heirs of the original owners and for about two years has been taking coal from under this land.

Plaintiffs brought this action, alleging trespass and damages, and also prayed for an injunction. On the joining of issues, the trial court permitted evidence (over objection and with rulings reserved) to show that the oral understanding of the parties was that if the grantees of the contract of 1895 should not complete the work of mining the coal in twenty years they would have to take it out thereafter by a shaft or "some other way than by going upon the premises"; and that the stipulation that the contract should terminate in twenty years referred to the use of the real estate in taking out the coal, and that the grantee or his assigns should vacate all surface occupancy at the end of twenty years.

The trial court made a general finding for the defendant and entered judgment accordingly.

The written contract of 1895 was not ambiguous and was in no need of oral evidence to clarify its meaning. The written contract of the parties defined the extent and duration of the estate acquired by plaintiff's grantor. It is true that a separate subsurface estate was carved out of the original fee, but it was a determinable and not an unlimited estate. It was an estate for years, and the contract clearly and repeatedly specified the maximum duration of the estate conveyed to the grantees. True, also, there was a specific sale of the coal, but the whole contract has to be read and construed together; and it is clearly implied from all its terms that the coal thus sold was to be removed in twenty years; and all rights conferred by the contract—not merely the surface rights of occupancy, access, etc.—but the contract, in all its parts, "shall cease and be determined, and all of the rights of the said second parties, their heirs or assigns, thereunder or hereby acquired, shall terminate and determine at the expiration of twenty years." In other words, there was a conveyance of a present estate in all the coal in place, but defeasible as to any coal not mined within the time limit fixed by the contract.

Appellant cites more or less analogous cases which seem to hold that where coal in place or standing timber is sold and

Shank v. Coal Co.

a term of years is specified in which such coal or timber is to be removed, the lapse of the specified time does not terminate the grantee's right to the coal or timber, but only cuts off the right of access thereto, leaving the matter of further access to future negotiations or to the grantor's right to damages for trespass and the like.   Appellee cites a line of cases more in harmony with our view, although our judgment is based upon our interpretation of the particular contract before us, rather than upon precedent and analogy.   Some of the cases which by analogy support our conclusions are: *Butler .v. M'Gorrisk,* 114 Fed. 300; *Morgan v. Perkins,* 94 Ga. 353; *Mc-Rae v. Stillwell, Millen & Co.,* 111 Go. 65, 55 L. R. A. 525-531, and note; *Howard v. Lincoln,* 13 Me. 122; *King v. Merriman,* 38 Minn. 47; *Hawkins v. Lumber Co.,* 139 N. C. 160; *Lumber Co. v. Corey,* 140 N. C. 462; *Midyette v. Grubbs,* 145 N. C. 85, 13 L. R. A., n. s., 278, and note; *Clark v. Guest,* 54 Ohio St. 298; *Saltonstall v. Little,* 90 Pa. 422; *Rich* v. *Zeilsdorff,* 22 Wis. 544; and *Strasson v. Montgomery,* 22 Wis. 52.

In *Austin v. The Huntsville. Coal & Mining Company,* 72 Mo. 535, where the grantor conveyed all the coal under his land for twenty years, the court said:

"If the parties had intended an absolute grant of 'all the coal' under the land described, the time during which the coal should be dug would not have been limited.   For, by thus limiting the time, during which mining operations were to be carried on, it is equivalent to saying that the party of the second part is to have all the coal it can mine on the premises, before the lapse of twenty years."   (p. 541.)

In 1 Barringer and Adams's Law of Mines and Mining in the United States, it is said:

"The form of the conveyance is unimportant.   It makes no difference that it is called a lease, and that its terms are those for leasing real estate. *If it shows an intention to convey all of the specified mineral* in the particular land, it effects a sale or absolute conveyance thereof.

"If the instrument shows such an intent, it is none the less a sale because a term of years is prescribed within which the mineral must be taken out.   Nor is the nature of the grantee's estate changed by the fact that he fails to mine during that term.   There is in such case a sale to him, not a lease; but a reversion takes place at the end of the term to the grantor.

"The fact also that the purchase-money depends upon the amount of coal mined is of no moment in determining the nature of the estate. The question is whether all the coal is conveyed; if so, there is a sale thereof.

"The rather paradoxical result of the above statement—that the nature of the estate is unaffected by the limitation of the privileges to a term of years—is apparently a fee-simple estate for a term of years. This seems to have deterred some courts from following in terms the rule as laid down in Pennsylvania. It seems, nevertheless, that that position is a necessary one, however it is worked out, and it may be theoretically justified on either of two lines of reasoning, . . . First, the limitation to a term of years may be regarded as a limitation, not upon the estate, but upon the appurtenant rights, without which the estate will be of no value. Second, the failure to take out all the mineral within the specified term may be treated as a forfeiture of the estate." (p. 36.)

The judgment is affirmed.