No. 23,110.

W. B. LUMAN, *Appellee*, v. D. C. DAVIS et al., (GREGG E. SAWYER et al., *Appellants*).

### SYLLABUS BY THE COURT.

1. CONTRACT—*Relating to "Oil, Gas and Other Minerals Found" Under Certain Lands—Minerals Not Severed and Conveyed as Real Estate.* An instrument granting "all oil, gas and other minerals found" in and under described land, together with right to enter, drill, operate, and do the things necessary to produce, interpreted, and held not to sever and convey as real estate minerals deposited in the soil.

2. SAME—*Action to Cancel Oil and Gas Lease—Abandonment of Lease Not Shown.* An allegation in a petition to cancel a mineral lease, that the lessee removed machinery, casing and property from the premises without productive development, does not, standing alone, show abandonment.

Appeal from Labette district court; ELMER C. CLARK, judge. Opinion filed April 9, 1921. Reversed.

*J. B. Tomlinson,* of Independence, for the appellants.
*Elmer W. Columbia,* of Oswego, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to cancel an instrument bearing the heading "Oil and Gas Lease," on the ground it had not been recorded or listed for taxation, as required by statute, and on the ground of abandonment. A demurrer to the petition was overruled, and assignees of the lessees appeal.

The instrument reads as follows:

"In consideration of the sum of One Dollar, the receipt of which is hereby acknowledged, S. W. Gutherie, a widower, of . . . of the first part, hereby grant unto D. C. Davis and F. F. Cox second party, all the oil, gas and other minerals found in and under the following described premises, together with the right to enter thereon at all times for the purpose of drilling and operating, and to erect and maintain all buildings and structures, and the exclusive right to lay all pipe and sluices necessary for the production and transportation of oil, gas or other minerals taken from said premises. Excepting and reserving, however, to the first part ⅛ part of all oil or other minerals produced and saved from said premises, to be delivered in pipe line by the second party, namely: [Description.]

Luman v. Davis.

"If gas only is found in quantities large enough to transport, then party of the first part is to receive $150.00 for the product of each and every well so transported, and also free gas for dwelling on the above described land, for heating and lighting purposes.

"If no well is commenced within one year on the above land then this grant shall become null and void, unless second party shall pay annually thereafter in cash the sum of $720 payable quarterly Dollar . . ., on said land leased; the same to be deposited to the credit of the first party in the Peoples State Bank at Md. Valley, Kans.

"The second party shall have the right to use sufficient gas, oil and water to run all machinery for operating the wells on the above premises and on adjoining farms operated by second party. Fences not to be cut. Gates and fences to be kept closed to prevent stock from running at large.

"*And It Is Further Agreed*, That the lessor, in consideration of the agreements of the lessee, herein contained, agrees that the lessee, his heirs or assigns, may at any time surrender up this lease and remove all his property, by delivering the same back to the lessor, his heirs or assigns, indorsed with a surrender thereof signed by him, or his assigns, and be thereby forever discharged and released from all moneys due or to become due, and from all obligations accrued or to accrue under this lease.

"It is understood between the parties to this agreement that all conditions between the parties hereunto shall extend to their heirs, successors, and assigns."

The statute under which cancellation is claimed reads as follows:

"That where the fee to the surface of any tract, parcel or lot of land is in any person or persons, natural or artificial, and the right or title to any minerals therein is in another or in others, the right to such minerals shall be valued and listed separately from the fee of said land, in separate entries and descriptions, and such land itself and said right to the minerals therein shall be separately taxed to the owners thereof respectively. The register of deeds shall furnish to the county clerk, who shall furnish on the first day of March each year to each assessor where such mineral reserves exist and are a matter of record, a certified description of all such reserves: *Provided*, That when such reserves or leases are not recorded within ninety days after execution, they shall become void if not listed for taxation." (Gen. Stat. 1915, § 11280.)

In the case of *Gas Co. v. Neosho County*, 75 Kan. 335, 89 Pac. 750, and other cases, this court interpreted the statute to refer to severed ownership of the surface portion of land, and mineral deposits embedded in the soil. When such severance occurs, the minerals are separately listed, valued, and taxed as real estate. In this instance, the grant is not a present grant of oil, gas and other minerals in and under the land described.

It is merely a grant of oil, gas and other minerals "found" in and under the land. Property is contingent on finding, and no title passes until discovery, made in exercise of the right to drill, operate, and produce. The reservation to the grantor aids this interpretation. The reservation is not of a portion of the mineral beneath the surface of the land, but is of a portion of the "oil or other mineral produced and saved" from the premises. That the grant was a grant of the right to search for mineral and to take if found, is further indicated by the expression "if gas only is found." The provision that, unless search begin by digging a well within a year, the grant shall be void, is more appropriate to grant of a privilege than to vesting of title to land, and the provision for surrender is not apposite to a conveyance of real estate.

A search, which was necessarily brief, has disclosed one case in which emphasis was placed on the word "found," or rather on the words "to be found," used in a grant of mineral privileges. In *Grubb v. Bayard,* 2 Wall. Jr. 81, the grant was to David Foree, his heirs, executors and administrators, from time to time and for all time, to "dig, take and carry away all iron ore to be found" within the bounds of a certain tract, the consideration being six pence per ton, Pennsylvania currency, for every ton taken. Applying the doctrine that a grant of full use of a thing, and unlimited dominion over it, is a grant of the thing itself, it might have been held the ore was granted. (*Caldwell v. Fulton,* 31 Pa. St. 475.) The opinion of the court follows, the italics being found in the report:

"1st. For the purposes of the present decision we *assume* that the covenant in question contains a *grant in fee* to Bennet and his heirs for a sufficient consideration *to be paid.*

"2nd. We decide, that the thing granted is *not* the iron ore contained in the land of defendant; but an incorporeal hereditament, a right or license or liberty, well described in the plaintiff's declaration as 'a right and privilege to dig, take and carry away' *all* or *any* iron *ore to be found* in the land of defendant. It is a license irrevocable, which may be demised for a term of years, or assigned in fee.

"3rd. That until the grantee or his assigns exercised this privilege by *digging, taking,* &c., *iron* ore *found* in the land, they had no property *in* the ore that would support an action of trover for the same." (*Grubb v. Bayard,* 2 Wall. Jr. 81, 99.)

The plaintiff cites the case of *Gas Co. v. Oil Co.,* 83 Kan. 136, 109 Pac. 1002, in which the grant was of "all the oil, coal and

gas in and under" described land (p. 137). Various features of the instrument indicated it was a deed of real estate, but the terms of the grant itself were the most significant. In the opinion the court said:

"The language of the instrument is manifestly that of a grant, and not of a license. It purports to convey all of the coal, oil and gas underneath the tract of land, instead of a privilege, or license, to prospect for and to sever and own so much of it as the lessee might find. It transfers at once, and makes him the owner of, the minerals under this tract of land—a very different thing from giving him the right to prospect and to own only that which he finds . . ." (p. 141.)

The charge of abandonment is too parsimonious of facts. It is specific, and is rested solely on the defendants' "removing all of their machinery, casing and property from the same [the premises described], without any productive development thereon." Abandonment depends on intention and conduct, and the conduct charged, standing alone, does not negative intention to fulfill the purpose of the grant.

The judgment of the district court is reversed, and the cause is remanded with direction to sustain the demurrer.