No. 33,117

CHARLES T. RICHARDS, *Appellant*, v. O. P. SHEARER, *Appellee.*

(64 P. 2d 56)

Opinion filed January 23, 1937.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Morris* and *John F. Eberhardt,* all of Wichita, for the appellant.

*C. A. Matson, I. H. Stearns* and *E. P. Villepigue,* all of Wichita, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was a suit to cancel a mineral conveyance designated "Sale of Oil and Gas Royalty," to quiet title, and for damages. The trial court denied the requested cancellation, and plaintiff appeals.

The royalty conveyance was not recorded within ninety days after its execution. The statute on which plaintiff relies is R. S. 79-420. It provides:

"That where the fee to the surface of any tract, parcel or lot of land is in any person or persons, natural or artificial, and the right or title to any minerals therein is in another or in others, the right to such minerals shall be valued and listed separately from the fee of said land, in separate entries and descriptions, and such land itself and said right to the minerals therein shall be separately taxed to the owners thereof respectively. The register of deeds shall furnish to the county clerk, who shall furnish on the first day of March each year to each assessor where such mineral reserves exist and are a matter of record, a certified description of all such reserves: *Provided,* That when such reserves or leases are not recorded within ninety days after execution, they shall become void if not listed for taxation."

The royalty conveyance reads:

"SALE OF OIL AND GAS ROYALTY

"1. Know all men by these presents, That Gladys Hoit and Wallace F. Hoit, her husband, of Sedgwick county, state of Kansas, for and in consideration of the sum of one and no/100 dollars ($1.00) cash in hand paid by .............. ...................., hereinafter called grantee......, the receipt of which is hereby acknowledged, have granted, sold, conveyed, assigned and delivered, and by these presents do grant, sell, convey, assign and deliver unto said grantee...... an undivided one-half interest in and to all of the oil, gas and other minerals in and under, and that may be produced from the following described land situated in Sedgwick county, state of Kansas, to wit: (Here follows description) containing ...................... acres, more or less, together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said lands for oil, gas and other minerals and removing the same therefrom, with the right at any time to remove any or all equipment in connection therewith.

"2. Said land being now under an oil and gas lease executed in favor of O. P. Shearer, it is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes one half of all the oil royalty, and gas rental or royalty due and to be paid under the terms of said lease.

"3. It is understood and agreed that one half of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said grantee...... and in the event that the above-described lease for any reason becomes canceled or forfeited then and in that event this conveyance shall terminate.

"4. *"To have and to hold,* the above-described property, together with all and singular the rights, appurtenances thereto in anywise belonging unto the said grantee...... herein, his heirs and assigns as long as above-mentioned oil and gas lease is in full force and effect or as long as oil and/or gas is produced and saved; and they do ........ hereby bind their heirs, executors and administrators to warrant and forever defend all and singular the said property unto said grantee...... herein, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof, and agree that the grantee...... shall have the right at any time to redeem for grantors by payment, any mortgage, taxes, or other liens on the above-described lands, in the event of default of payment by grantors, and be subrogated to the rights of the holder thereof."

The suit was tried on the pleadings and an agreed statement of facts. Pertinent portions of the latter disclose the following: On June 26, 1934, defendant Shearer was the owner of an oil and gas lease on the land; on that date Gladys Hoit and Wallace F. Hoit, her husband, being the owners of the fee-simple title, executed and delivered the royalty conveyance here in question to defendant; January 30, 1935, the royalty conveyance was recorded; March 1, 1935, oil was first produced; March 23, 1935, oil was first run into the pipe line; April 4, 1935, plaintiff became owner of the legal and equitable title to the land, and is now such owner; May 29, 1935, plaintiff made demand on defendant for release of royalty conveyance, which defendant refused to make; after that demand and refusal this suit was filed; on the date the suit was filed and at all times thereafter plaintiff has been in possession of the property.

The portion of the agreed statement of facts dealing with listing of the instrument for taxation was dictated into the record and is as follows:

"Seventh: That the instrument in controversy was not listed for taxation within the ninety-day period from the date of its—

"[Mr. Stearns]: Unless it be held that the filing with the register of deeds is a listing. Other than that there was no listing.

"[Mr. Smith]: The listing for taxation being the date shown that it was recorded with the register of deeds.

"[Mr. Stearns]: If it was."

The first question presented is whether the conveyance was of such character as to bring it within the purview of R. S. 79-420. This inquiry prompts a second question: Did the conveyance transfer the right and title to oil and gas in place to defendant? Plaintiff insists it did. His contention is that paragraphs one and four

of the conveyance did more than simply grant a license to explore for oil and gas, and did more than merely grant an interest in and to certain oil and gas when, and if, produced. He argues the conveyance created a present estate in oil and gas in the ground. In other words, he claims the conveyance carved a present subsurface estate out of the fee, that the estate created was a determinable fee or a fee simple determinable in oil and gas in place. The contention is supported by abundant authority. (*Gas Co. v. Oil Co.*, 83 Kan. 136, 109 Pac. 1002; *Horville v. Cement Co.*, 105 Kan. 305, 182 Pac. 548; *Shank v. Coal Co.*, 107 Kan. 380, 191 Pac. 482; *Burden v. Gypsy Oil Co.*, 141 Kan. 147, 40 P. 2d 463; *Hickernell v. Gregory* [Tex. Civ. App.], 224 S. W. 691; *Stephens County v. Oil & Gas Company*, 113 Tex. 160, 254 S. W. 290.) The nature of this conveyance must not be confused with what is ordinarily termed an assignment of a royalty interest. This distinction was clearly emphasized in the Gypsy Oil Company case, where it was said:

"In connection with the above, our attention is directed to the question of what constitutes royalty, and that it is personal property, and *Bellport v. Harrison*, 123 Kan. 310, 255 Pac. 52, is cited. But under that case royalty refers not to the oil in place, but to the share in the oil and gas produced and paid as compensation for the right to drill and produce, and does not include a perpetual interest in the oil and gas in the ground." (p. 151.)

In the case of *Gas Co. v. Oil Co.* is found the pertinent statement:

"It will be observed that the lease in question gives more than a license, more than an incorporeal hereditament. It 'grants, conveys and warrants unto Robert Fleming, second party, his heirs, successors and assigns, all the oil, coal and gas in and under the following-described premises.' In connection with the grant the right is given to enter and use the surface so far as may be necessary for the second party to· avail himself of the use and benefit of the part conveyed. . . . The language of the instrument is manifestly that of a grant, and not of a license. . . . It transfers at once, and makes him the owner of, the minerals under this tract of land—a very different thing from giving him the right to prospect and to own only that which he finds and brings to the surface." (p. 141.)

In the Shank case the rule was stated thus:

"It is true that a separate subsurface estate was carved out of the original fee, but it was a determinable and not an unlimited estate. It was an estate for years, and the contract clearly and repeatedly specified the maximum duration of the estate conveyed to the grantees. . . . In other words, there was a conveyance of a present estate in all the coal in place, but defeasible as to any coal not mined within the time limit fixed by the contract." (p. 382.)

In 1 Thornton on Oil & Gas (5th ed.), § 91, it is said:

"A lease conveying oil and gas in place with the right to enter and appropriate creates a determinable fee or fee simple determinable in the oil and gas in place. . . ." (p. 153.)

In the Stephens county case the action was one to enjoin the assessment and collection of taxes on a separate right or interest created by an oil and gas conveyance. Concerning the question of whether oil and gas in place are objects of distinct ownership and sale, it was said:

"The question of whether gas and oil in place were capable of separate ownership and sale was carefully considered and finally determined by this court in *Texas Company v. Daugherty,* 107 Texas 234 to 240, 176 S. W. 717, L. R. A. 1917 F, 989. The opinion in that case leaves no room for reasonable doubt as to the soundness of the conclusion that gas and oil in place are objects of distinct ownership and sale as a part of the land. Moreover, we regard that view as in harmony with the overwhelming weight of the authorities. (The Law of Oil & Gas, vol. 18, Michigan Law Review, p. 459. . . .)

"Nor does the possibility of future reversions accomplish present reinvestitures of title in the former owners." (p. 168.)

So, in the instant case, title had vested in defendant upon the execution and delivery of the royalty conveyance. The fact the estate in the oil and gas in place might be terminated by a subsequent condition, such as cancellation of the oil and gas lease, to which lease this conveyance was made subject by paragraphs two and three thereof, did not prevent present vesting of title. Conditions subsequent could only defeat the estate formerly created and vested. In 18 C. J. 364 (Deeds, § 383), the rule is stated thus:

"As has been noted, a condition subsequent is one operating on an estate already created and vested and rendering it liable to be defeated. The estate vests immediately on the execution and delivery of the deed. All that remains in the grantor is the possibility of reverter or right of entry on condition broken. The estate will remain defeasible until the condition is performed, destroyed, or barred by the statute of limitations, or by estoppel." (p. 364.)

This brings us to plaintiff's second contention. The petition alleged defendant failed to comply with the provisions of R. S. 79-420, in that he failed to record the conveyance within ninety days from its execution, and hence the conveyance was void. True, the conveyance was not recorded within ninety days after its execution, but the statute does not say it shall therefore be void. The proviso reads:

"That when such reserves or leases are not recorded within ninety days after execution, *they shall become void if not listed for taxation.*" (Italics inserted.)

Did the recording before March 1, 1935, constitute the necessary listing of property taxed as real estate? We think it did. The conveyance effected a severance of the oil and gas in place. The estate conveyed to the oil and gas in place is taxed as real estate. In *Robinson v. Jones,* 119 Kan. 609, 240 Pac. 957, it was said:

"When mineral in place is severed by deed, it is taxed as real estate to the owner, and the remainder of the land is taxed to its owner (R. S. 79-420.)" (p. 613.)

See, also, *Gas Co. v. Neosho County,* 75 Kan. 335, 89 Pac. 750, and *Luman v. Davis,* 108 Kan. 801, 802, 196 Pac. 1078. The grantor of the conveyance owned the land, together with all mineral rights thereunder on March 1, 1934. That was the taxing year for real estate. (R. S. 1933 Supp. 79-402.) The entire tax would properly have been assessed against the property of the grantor. This conveyance was executed June 26, 1934. One month before March 1, 1935, the instrument was recorded. We know of no law requiring additional listing of property taxed as real estate.

No oil was produced prior to March 1, 1935, and the first oil was run into a pipeline on March 23, 1935. The conveyance was recorded in ample time to enable the register of deeds to furnish the county clerk, and he in turn the assessor, with a certified description of the reserve made by the conveyance. It was not the intention of the legislature to declare the conveyance void by reason of failure to record it within the allotted time. Therefore it attached the further condition, to wit: "They shall become void if not listed for taxation." The instrument was recorded one month before March 1. If it was not assessed shall defendant suffer forfeiture of title by reason of official neglect? We think not.

Plaintiff directs our attention to the rule as to recording and listing announced in *Gas Co. v. Neosho County,* supra; *Gas Co. v. Oil Co.,* supra, and *Horville v. Cement Co.,* supra. We are mindful that in the case of *Gas Co. v. Oil Co.* it was said:

"As the owner of the interest in question failed to record the lease within the prescribed time, and also failed to list the property for taxation, the lease was a nullity, and the judgment of the trial court deciding that it was void is affirmed." (p. 143.)

In the same case, however, is contained the further statement:

"The lease does not become void by the mere failure to record it, but only when there is the additional delinquency of omitting to list it for taxation. If it is recorded as the statute enjoins, the taxing officer has an opportunity to find and assess the property conveyed by it; and if the owners omit to record the lease and also omit to list it, and thus bring it to the attention of the taxing officials within the time fixed for listing property, the lease then becomes void, and may be so declared by the court at the instance of any interested party." (p. 143.)

We also note that in *Gas Co. v. Neosho County* it was stated:

"Minerals in place being real estate, the act assumes that instruments creating separate interests in them will be placed of record, but it provides that if such instruments are not recorded within ninety days after execution they shall become void, unless they are brought to the attention of the tax officials so that the purpose of the first part of the section may be accomplished." (p. 338.)

The statement in the Horville case is to the same effect.

While this conveyance was not recorded within ninety days, can it be doubted it was brought to the attention of taxing officials? If the purpose of the act was not accomplished was it not due to failure of the register of deeds to perform his duty under the statute or to the failure of taxing officers to assess the property after being advised of the conveyance? In *Gas Co. v. Oil Co.*, supra, it was said: "If it is recorded as the statute enjoins, the taxing officer has an opportunity to find and assess the property conveyed." In this case failure to have it recorded as the statute enjoined did not, under the evidence presented, prevent the taxing officer from having ample opportunity to find and assess the property. We might also state we find nothing in the record indicating it was not found by the assessor. Furthermore, this was a proceeding in equity. The conveyance having been recorded a month before March 1, and the property having been clearly subjected to taxation in ample time, we are not inclined to disturb the judgment of the trial court.

The judgment is affirmed.