No. 33,443

Louis Serena et al., *Appellees,* v. Louis Rubin, *Appellant.*

(72 P. 2d 995)

Opinion filed November 6, 1937.

*Clarence R. Sowers,* of Wichita, for the appellant.

*W. L. Sayers* and *Wendell P. Sayers,* both of Hill City, for the appellees.

The opinion of the court was delivered by

Hutchison, J.: This was an action to cancel two oil and gas leases and two oil and gas deeds, called royalty deeds, on land in Graham county, given by plaintiffs on January 19, 1935, to the de-

fendant, and in the alternative to recover from the defendant the value thereof, the plaintiffs alleging that they are husband and wife, being eighty-two and sixty-six years of age, respectively, the husband being an Italian and with a very limited knowledge and understanding of the English language, and the wife with no experience in business matters and especially as to oil and gas matters and conveyances; that they signed and executed such deeds and leases without knowing or understanding the nature and extent thereof because of the solicitation of the defendant and his companion, Williams, and their representations that the instruments they were asked to sign would not interfere with their right to lease the land for oil and gas and that the money rentals would go to the plaintiffs. Plaintiffs allege that all of such statements and representations made by the defendant and his companion, Williams, were false and untrue and fraudulently made to deceive the plaintiffs so as to induce them to sign and execute said instruments for the inadequate consideration of $200, which sum plaintiffs tendered into court in their amended petition.

The answer of the defendant was a general denial, except a disclaimer as to conveyances and assignments made by defendant to the Phillips Petroleum Company prior to the commencement of this action.

After the introduction of the evidence of the plaintiffs the defendant demurred thereto, which demurrer was overruled by the trial court, and after the close of the evidence of the defendant the court made findings of fact and conclusions of law, which were in favor of the plaintiffs, and after the overruling of the motion for a new trial the defendant appealed, assigning as errors the overruling of the demurrer to the evidence of the plaintiffs, the rendering of judgment for plaintiffs and against the defendant, the overruling of the motion for new trial and error in the making of findings of fact and conclusions of law.

The record shows the demurrer to the evidence of the plaintiffs was overruled more than six months prior to the time the notice of appeal was served, and in line with the holding in the case of *Greiner v. Greiner*, 130 Kan. 333, 286 Pac. 219, this is not a reviewable error. It was there held:

"An order overruling a demurrer to the evidence of a party is not open to review, if an appeal therefrom is not taken within the six-months limitation." (Syl. ¶ 1.)

See, also, to the same general effect as to appeals taken from orders sustaining demurrers to the evidence: *White v. Railway Co.,* 74 Kan. 778, 88 Pac. 54; *Schubach v. Hammer,* 117 Kan. 615, 232 Pac. 1041; and *Security Finance Co. v. Hoyt,* 143 Kan. 11, 53 P. 2d 802.

The remaining assignments of error can well be considered together and the findings of fact made by the trial court are of vital importance in doing so. The trial court found substantially the handicaps alleged in the petition as to the plaintiffs in the way of not fully understanding and comprehending important business transactions of this kind at the time they executed the deeds and leases, which was on January 19, 1935, and in the same connection found that shortly prior to this transaction the plaintiffs had executed an oil and gas lease on a quarter section of land to the Empire Company and had received a bonus of $160; that several years prior thereto plaintiffs had signed a mineral deed on a quarter section of land, placing it in a pool, named the Farmers Union Royalty Company; that the defendant was a dealer in oil leases and royalties, as was also his companion, Williams, who was associated with defendant under an agreement to receive a one-third share in the profits of the transaction; that the defendant and his companion solicited the plaintiffs to sell royalties, stating that they did not want to buy leases, but wanted royalties, and "that the sale of royalties did not cut any figure with the right to lease, and . . . that Rubin would only get a share of the oil produced." The first part of the third finding is as follows:

"Notwithstanding the fact that no mention was made of a mineral deed in any of the negotiations, nothing was said suggesting that Rubin expected to purchase anything beyond a mere royalty or interest in the oil and gas produced on the land. That the defendants prepared mineral deeds for Serena and wife to sign, one deed conveying to L. Rubin an undivided one-half interest in the oil and gas and other mineral in and under the west half of section 19, including the half interest in all money rentals, unpaid bonus money, and oil and gas rentals under any oil and gas leases involving the said lands, and one mineral deed to the same effect covering the east half of section 25."

The trial court further found in the fourth paragraph that the deeds were procured by misrepresentations as to the contents thereof; that such misrepresentations were made by Rubin and Williams to the plaintiffs.

In the fifth paragraph the court found:

". . . that the $200 paid by the defendants was grossly inadequate; that in view of the ignorance and illiteracy of the said Louis Serena, and the representations made by the defendants, that the same is insufficient to sustain said documents under the circumstances in this case."

In the sixth paragraph the court found that defendant, for a valuable consideration, had sold and transferred a part of the rights conveyed to him by the mineral deeds to Phillips Petroleum Company, and concluded the sixth paragraph as follows:

"The court finds that the value of the mineral deed and lease so transferred to the Phillips Petroleum Company was and is the sum of $520, and that L. Rubin and L. E. Williams should account to the plaintiffs for said value."

The conclusions of law were in favor of rendering a judgment against the defendant Rubin for $520, less the $200 tendered into court, and cancelling and setting aside the other mineral deeds and leases and quieting the title in the plaintiff, Louis Serena.

A copy of the royalty deed, executed in this case by the plaintiffs to the defendant, L. Rubin, was introduced in evidence. It bears the title in large type "Sale of Oil and Gas Royalty." In the first paragraph of said conveyance is the following language:

". . . have granted, sold, conveyed, assigned and delivered, and by these presents do grant, sell, convey, assign and deliver unto said grantee an undivided one-half interest in and to all of the oil, gas and other minerals in and under and that may be produced from the following-described land. . . ."

In a subsequent paragraph of said instrument reference is made to the conveyance including "one half of all oil, gas and other minerals in and under said lands, together with one-half interest in all future events."

The appellant insists that the finding of *gross* inadequacy of price is not sufficient ground for setting aside a written contract, that it must be *wholly* inadequate, referring first to the case of *Gulf Rld. Co. v. Comm'rs of Miami County*, 12 Kan. 482, where it was held:

"Mere inadequacy of price affords no ground to set aside a contract of sale, unless it be of so gross a nature and given under such circumstances as to afford a necessary presumption of fraud or imposition." (Syl. ¶ 6.)

This case involved a sale where there was found to have been a collusion between the agent of the vendor and the purchaser, but it recognizes *gross* inadequacy in the purchase price as sufficient, instead of requiring it to be *wholly* inadequate. The same principle is stated in 9 C. J. 1176, cited by the appellant, and the text, after announcing the general rule, adds:

". . . yet it is equally well settled that where gross inadequacy of consideration is shown the law requires of defendant strict avoidance of all false, deceitful, or unfair means calculated to advantage his design; and where in addition to inadequacy of price, weakness of mind, pecuniary distress, fraud, undue influence, or duress, or the like is shown, equity will grant relief by rescission and cancellation."

4 R. C. L. 501-506 is also cited by appellant to show that courts of equity are not the guardians of people who act improvidently and accept inadequate prices, and such prices should be unconscionable in order to set aside the contract. But this general rule recognizes a modification "where the simplicity and credulity of people are taken advantage of by the shrewdness, overreaching and misrepresentation of those with whom they are dealing." (p. 502.)

Other cases are cited by appellant where there were no allegations of fraud, or where the misrepresentations were made to the wife by her husband, or where some steps had been taken to ratify the contract and where the misrepresentations were concerning matters of law. (26 C. J. 1208.) We do not think these rules are strictly applicable to the case at bar. The petition here alleged the misrepresentations, that they were made by the defendant and his associate, who were benefited by the deal accomplished. Nothing was done to ratify the contract. This action was commenced in about two months after the papers were signed, and the misrepresentations complained of were matters of fact, the main one being as to the nature and extent of the conveyance the plaintiffs were asked to execute—the instrument itself showing it to be a conveyance of minerals in place instead of royalty. The court found the only conversation had was concerning a royalty, whereas the instrument executed conveyed the oil, gas and minerals in place or under the ground.

The question of this difference between a royalty and a mineral deed was definitely settled in the case of *Bellport v. Harrison*, 123 Kan. 310, 255 Pac. 52, where it was held:

"The ordinary and legal meaning of the word 'royalty,' as applied to an existing oil and gas lease, is the compensation provided in the lease for the privilege of drilling and producing oil and gas, and consists of a share in the oil and gas produced. It does not include a perpetual interest in the oil and gas in the ground.

"The ordinary meaning of the word 'royalty' in an existing oil and gas lease cannot be enlarged by proof of usage and custom so as to include a conveyance of oil and gas in place in the land and the perpetual right to go upon the premises to explore for and produce oil and gas." (Syl. ¶¶ 1, 2.)

This ruling was approved and confirmed in the case of *Burden v. Gypsy Oil Co.*, 141 Kan. 147, 40 P. 2d 463, where it was held:

"The royalty paid to the lessor refers not to the oil and gas in place, but to the share in the oil and gas produced and paid as compensation for the right to drill and produce, and does not include a perpetual interest in the oil and gas in the ground." (Syl. ¶ 3.)

In a more recent case, *Richards v. Shearer*, 145 Kan. 88, 64 P. 2d 56, a conveyance designated, "Sale of Oil and Gas Royalty" was held, after an examination of its provisions, to be "a severance of title to oil and gas in place." (See, also, *Gas Co. v. Oil Co.*, 83 Kan. 136, 109 Pac. 1002; *Hover v. McNeill*, 102 Kan. 492, 175 Pac. 150; *Horville v. Cement Co.*, 105 Kan. 305, 182 Pac. 548; *Shank v. Coal Co.*, 107 Kan. 380, 191 Pac. 482; *Robinson v. Jones*, 119 Kan. 609, 240 Pac. 957; and *Miller v. Sooy*, 120 Kan. 81, 242 Pac. 140.)

In Glassmire on Oil and Gas Leases and Royalties, the definitions of these terms are given as follows:

"A royalty proper is a participation in the proceeds derived under the terms of the lease. A mineral deed is not a 'royalty' but is an evidence of mineral ownership, or the rights thereto, which interest may or may not produce a royalty under an existing or subsequent lease." (p. 63.)

There can be no question but that the document executed by the plaintiffs in this case, although denominated a royalty deed and explained to the plaintiffs as such, was a mineral deed, and such representation to persons, handicapped as the court found the plaintiffs were, was a serious misrepresentation and the difference between two such conveyances made the price offered and accepted grossly inadequate; and as the findings of the trial court are supported by the evidence, the plaintiffs were entitled to have the instruments canceled and to recover for so much as had passed into the hands of innocent purchasers.

We find no error in the making of the findings and conclusions nor in the ruling upon the motion for a new trial.

The judgment is affirmed.