No. 36,676

C. R. HOLLAND, *Appellant,* v. C. W. SHAFFER et al., *Appellees.*

(178 P. 2d 235)

*Clifford R. Holland,* of Russell, argued the cause, and *George W. Holland* and *Herbert N. Holland,* both of Russell, were with him on the briefs for the appellant.

*Oscar Ostrum,* of Russell, argued the cause and was on the briefs for appellees Oswald, Milliard, Rose and Nastasio; *F. J. Leasure,* of El Dorado, was on the briefs for appellee Annie D. Liggett, individually, and as executrix; *Harold W. McCombs,* of Russell, was on the briefs for appellees Gerard.

The opinion of the court was delivered by

WEDELL, J.: In this action plaintiff, the owner of an undivided fractional interest in and to the oil and gas in and under certain land in Russell county, sought to have the interests of numerous defendants in and to such mineral estate determined and partitioned. Plaintiff appeals from an order sustaining the general demurrers of various defendants to his petition.

Personal service was had on some of the numerous defendants and publication service was had on others.

In his petition appellant sets forth the undivided fractional interests in and to the oil and gas mineral rights owned by various persons which, including his own three-tenths' interest, amounted to approximately five-sevenths of such minerals. He also alleged another defendant claimed to own an undivided one-twentieth interest therein. In addition to the interests alleged to be now owned and claimed the petition alleged numerous other defendants, corporations, partnerships and individuals at one time claimed some interest in the minerals; that certain defendant corporations and a partnership were no longer in existence and the residences of the defendant corporations were unknown; some members of the partnership were deceased and that their heirs, if any, were unknown. It was further, in substance, alleged the interests of such corporations and of their successors, if any, and the interests of such individual defendants, or of their heirs and devisees, if any, were unknown and could not be ascertained.

The foregoing is not intended to narrate fully the allegations pertaining to the uncertainty of ownership, or claimed ownership, of such minerals, but is sufficient for present purposes. None of the conveyances of mineral interests to any of the parties disclosing the rights or obligations thereunder was attached. It appears the pe-

tition was not motioned to require appellant to set forth such conveyances.

It was alleged all defendants·claim some interest or right in and to the minerals but that the.extent of each interest or right claimed cannot be determined from the public records; their claims constitute a cloud on the exact ownership and rights of appellant and of all other owners of mineral interests.

The petition further alleged:

"The plaintiff further avers that the above and foregoing described land at one time had oil and gas production and that oil and gas was produced therefrom up to and until approximately the year 1935 when the oil and gas wells were plugged and the oil and gas mining equipment was removed therefrom and the leases abandoned by the leaseowners and ·is not now leased for oil and gas purposes; that said land is now located and situated to oil and gas production directly offsetting· it to the east and that since 1935 and since the abandonment of said lease, a deeper producing oil and gas horizon has been discovered and production therefrom is being obtained from said land immediately to the east of. the land specifically described in this petition and that as a result thereof, the oil and gas from said land is being drained and lost from the said South Half of the South Half (S½ S½) of said Section Seven (7) and the Northeast Quarter (NE¼)· of said Section Eighteen (18), all in Township Twelve (12) South; Range Fifteen (15) West of the 6th P. M.

. "The plaintiff further avers that said land cannot be leased for oil and gas purposes in that no company or individual engaged in oil business will drill upon said land unless it or he can secure an oil and gas lease, or leases, signed by all of the· owners of the mineral rights and that it has been impossible and is impossible on the. part of this plaintiff to lease said land for oil and gas purposes and to secure. development thereon by reason of the following facts, to-wit:

"(a) That the plaintiff has been unable to locate, or ascertain whether or not the following defendants are living. or dead, to-wit: Ardena Lewis, J. W. Farley, C. R. Weber, and if living, cannot ascertain their true and correct post office address of whereabouts and if dead, the names and residences and whereabouts of the heirs, devisees, administrators, executors, trustees and assigns of such deceased defendant or defendants.

"(b) That the plaintiff does not know and cannot ascertain whether or not the following defendant corporations are in existence or dissolved, to-wit: Gotham Oil and Gas Company, Gerhig Company, Commonwealth Trust Company, and if dissolved, the plaintiff has been unable to ascertain, with diligent effort, the names, residences and whereabouts of their unknown successors, trustees and assigns.

"(c) That the defendants, Lloyd J. Oswald, Donald F. Oswald, C. W. Shaffer, J. E. Missimer and A. E. Seeley, have refused and do now refuse to lease said land for oil and gas purposes and have refused and will not

assist this plaintiff in testing or exploiting said land for oil and gas purposes and that by reason of said failure, it has subjected said land, or any oil and gas production that might be found thereon to drainage and loss.

"Plaintiff further avers that by reason of said facts; said plaintiff is being deprived of the right and power to cause said land to be explored for oil and gas purposes and in the event that the same might be proven to be productive, is being deprived of said oil and gas production and that as a result said mineral rights, potentially valuable, have little or no present market value."

The petition then stated that by reason of the facts alleged the mineral interests and rights of the parties are subject to partition and that if partition in kind is impossible without manifest injury the mineral rights should be appraised and sold as provided for the sale of real estate.

Eleven demurrers were leveled against the petition but not all were based on identical grounds. The demurrers all included the ground the petition did not state a cause of action for the relief sought. Among the various demurrers were contained the grounds that the petition disclosed on its face appellant was not entitled to partition of the mineral interests; the court was without jurisdiction of the persons or subject matter and that several causes of action were improperly joined.

The trial court sustained all demurrers on the single ground the petition did not state facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendants, " . . . , in that said petition shows on its face that the action was brought for partition of oil and gas mineral rights in and under real estate described in said petition, and that said plaintiff has no *legal or equitable* right to enforce said partition." (Our emphasis.) No cross-appeal has been perfected by any of the defendants on the ground the court erred in failing to sustain their demurrer on other grounds.

Was it error to sustain the demurrer? Appellant concedes the only feasible form of partition probably would be by appraisal and sale of the mineral interests. Appellant also concedes this court, on three occasions, has denied partition sought by cotenants of oil and mineral interests. (*Fry v. Dewees,* 151 Kan. 488, 99 P. 2d 844; *Drake v. Drake,* 153 Kan. 56, 109 P. 2d 77; *Spikes v. Magnolia Petroleum Co.,* 158 Kan. 659, 149 P. 2d 348.) He contends, however, these decisions do not preclude partition between cotenants of mineral interests if justified on equitable grounds and that his petition alleged such facts.

There are three groups of appellees represented on appeal. Two groups make the same contentions. They argue the general demurrer was properly sustained on the legal ground that the petition did not allege appellant was in actual or constructive possession of the mineral interest he claimed to own. The point is not well taken. The petition alleged appellant was the owner of an undivided three-tenths' interest in and to the oil and gas minerals in and under the land. In the absence of a motion to set forth the conveyance by which appellant acquired such ownership, the allegation of ownership, on demurrer, must be accepted as alleging legal title to such interest. Such allegation of title is aided by the presumption that possession usually follows the legal title when no adverse possession is shown. (5 Pomeroy's Equity Jurisprudence, 4th ed. § 2131.)

Numerous other contentions are made by this group of appellees concerning the alleged insufficiency of the petition. The contentions are based on the theory the petition did not state a cause of action for partition on equitable grounds. The real and only question presented here is whether it was necessary to allege equitable grounds in order to obtain partition of the particular kind of property sought to be partitioned. If it were not necessary to allege equitable grounds we, of course, need not determine the sufficiency of such equitable grounds as were, or were intended to be, alleged.

It appears the parties to this appeal and the trial court have interpreted the Fry, Drake and Spikes cases, *supra,* as holding that no cause of action for partition of mineral interests can ever be stated unless it is based on sufficient equitable grounds. While the opinions in those cases may not be as explicit in all particulars as desirable we do not intend they should be interpreted as being so sweeping in scope. While there was some variation in the facts of those cases the last two cases, in the main, followed some distinct point decided in the Fry case. In the Fry case we held, in part, a demurrer should have been sustained on the ground of misjoinder of causes of action insofar as partition of the mineral interests, as distinct from partition of the surface rights, was concerned. We followed that ruling in the Drake case, *supra* (p. 58).

In the Fry case mineral deeds were involved which effected the severance of the minerals from the real estate. After such severance by deeds two separate and distinct estates were held to have been created and both were declared to be estates in real property. There were, however, also oil and gas leases on each of the separate parcels

of land involved. In this state an ordinary oil and gas lease is held to convey no interest in the land therein described but to create merely a license to explore, personal property. (*Burden v. Gypsy Oil Co.*, 141 Kan. 147, 150, 40 P. 2d 463; *Fry v. Dewees*, supra.) There was also production on one of the tracts of land in the Fry case. Division orders had been executed to cover disbursement of the proceeds of sale of the mineral products to the various cotenants. To that extent there already had been voluntary partition of the proceeds of production. Furthermore, the mineral deeds in the Fry case were also held to grant certain contract rights in personal property. We decided that under all the circumstances the personal property rights were inextricably bound up with the pure mineral rights conveyed by the several mineral deeds. We concluded partition should not be allowed in the absence of facts showing equitable reasons therefor. We, however, did not fail to recognize the fundamental distinction between the usual rights pertaining to partition of real and personal property. We held:

"As a general rule, a tenant in common of a fee-simple estate in real property is entitled to partition as a matter of right. Such right, however, is subject to the full power of the court to make a just and equitable partition between the parties and to secure their respective interests.

"The right to compel partition of personal property is not controlled by the provisions of the code of civil procedure respecting partition, but is only to be had upon application of equitable principles, and may be had only upon showing facts indicating sufficient reason for equitable interference." (Syl. ¶¶ 4, 5.)

While no production was involved in the Spikes case the land was encumbered with an oil and gas lease, personal property, owned by the defendant. We followed the ruling as to partition of personal property handed down in the Fry case.

Now what is the nature of the estate sought to be partitioned in the instant case? It is conceded there is no production and no existing oil and gas lease on the land involved. The petition discloses nothing is sought to be partitioned except undivided interests in and to the oil and gas minerals in place, held by the various cotenants. A mineral interest in and to oil and gas in place constitutes an interest in real estate. (*Richards v. Shearer*, 145 Kan. 88, 64 P. 2d 56; *Shaffer v. Kansas Farmers Union Royalty Co.*, 146 Kan. 84, 69 P. 2d 4; *Serena v. Rubin*, 146 Kan. 603, 72 P. 2d 995, *Hushaw v. Kansas Farmers Union Royalty Co.*, 149 Kan. 64, 86 P. 2d 559.)

480

In order to avoid any possible confusion in thought let it be clear we are not concerned here with personal property, such as royalties. Accurately speaking, a royalty, under an oil and gas lease, is a participation in the proceeds derived under the terms of the lease. Minerals in place are an interest in land which may, or may not, produce royalties under a lease. (*Bellport v. Harrison,* 123 Kan. 310, 255 Pac. 52; *Burden v. Gypsy Oil Co.,* supra; *Richards v. Shearer,* supra; *Serena v. Rubin,* supra.) Here we are concerned only with an interest in land.

Is a tenant in common of a fee-simple interest in land required to state a cause of action in equity in order to obtain partition? Ordinarily, as previously shown, a cotenant, in such an action, is entitled to partition, as a matter of right. The right of partition is considered an incident of common ownership. It is based on the equitable doctrine that it is better to have the control thereof in one person than in several who may entertain divergent views with respect to its proper control and management. The general rule therefore is that all property capable of being held in cotenancy is subject to partition by judicial proceedings, the partition being either in kind or by appraisal and sale. The general rule obtains as to stone, coal, oil and gas and other minerals in place when carved out of the fee by conveyance. (18 R. C. L., Mines, § 146, p. 1250; 36 Am. Jur., Mines and Minerals, §§ 204, 205, p. 420; 24 Am. Jur., Gas and Oil, § 10, p. 526; 1 Thompson on Real Property, § 101, p. 138; 1 Thornton's Law of Oil and Gas, 4th ed., § 315, pp. 781, 783; Mills-Willingham Law of Oil and Gas, § 180, p. 271; Anno. 39 A. L. R. 741; 5 Pomeroy's Equity Jurisprudence, 4th ed., § 2130; Freeman on Cotenancy and Partition, 2d ed., § 433; on Pleadings see, also, 47 C. J., Partition, § 342, p. 408.)

G. S. 1935, 60-2101 provides:

"When the object of the action is to effect a partition of real property, the petition must describe the property and the respective interests of the owners thereof, if known."

This statute is in harmony with a long-established general rule. (20 R. C. L., Partition, § 42, p. 760; 47 C. J. Partition, §§ 48, 53, 54, 56; *Willard v. Willard,* 145 U. S. 116, 36 L. Ed. 644.)

G. S. 1935, 60-2102, provides:

"If the number of shares or interests is known, but the owners thereof are unknown, or if there are, or are supposed to be, any interests which are unknown, contingent or doubtful, these facts must be set forth in the petition with reasonable certainty."

The instant petition meets our statutory requirements without regard to the allegations intended to support partition on equitable grounds.

Are we then compelled to conclude a cotenant of minerals in place may always obtain judicial partition thereof, as a matter of absolute right? Can there be no possible defense to such an action? Appellant concedes partition here should be by appraisal and sale for the reason it probably could not be made in kind without manifest injury. Appellees, however, argue that to permit partition of minerals in place, as a matter of right, might easily result in fraud and oppression; that mineral interests might be sold and later partitioned with the deliberate intent of "squeezing out" numerous cotenants of small means who had invested in such interests and who would be unable to purchase all the mineral interests in the event of partition by appraisal and sale; that owners of surface rights could likewise be deprived of fractional interests in and to the minerals in place which they retained and from which they hoped to reap substantial benefits.

On the other hand, it is argued that parties unable to purchase the entire mineral interests would be compensated for their interests out of the sale price; that no single holder of a fractional interest could make a valid lease under which exploration would be had; that no cotenant should be expected to drill an expensive well without assurance the other cotenants would share in the expense in the event drilling results in a dry hole; that if one or more cotenants refuse to join in a common lease, which would cost them nothing, they should not be permitted to block exploration and development by defeating partition while strangers are draining the minerals from the land by means of producing wells on adjoining property.

Usually the fact that partition results in hardship or inconvenience is no reason for withholding it. (5 Pomeroy's Equity Jurisprudence, 4th ed. § 2130, p. 4791.) Sales and purchases of mineral interests like transactions in other property are presumed to have been made in good faith and not fraudulently. But are courts of equity so powerless and so bound by precedent with respect to the right of partition that they cannot prevent the remedy of partition from becoming an instrument of fraud? Would not a confession of such lack of equitable power constitute a shocking announcement?

It must be admitted we are dealing here with an interest in real estate of a peculiar character and nature. It is also common knowledge that Kansas has tremendous reservoirs of oil and gas. The value of some of its mineral deposits, particularly gas, is said to exceed all possibility of computation. Widespread investments, both large and small, have been made in mineral interests in place. Of course, the mere magnitude of property or investments therein does not alter fundamental principles.

It is true our statute specifies what shall be stated in a petition for partition of real estate. But the statute is only procedural 'in' character. The statute does not say partition of real estate shall be granted *as a matter of right*. Courts of equity have evolved that rule. Our partition statute makes no attempt to deny to courts the power to consider defenses to such an action. In fact the statute does not deal with defenses to partition actions at all. It would therefore appear courts of equity retain their inherent power to consider defenses which would prevent the remedy of partition from becoming an instrument of fraud and oppression. In a carefully reasoned opinion in *Wolfe v. Stanford,* 179 Okla. 27, 64 P. 2d 335, it was held:

"Generally, the right of partition is absolute, but in connection with the partition of oil and gas rights, the court is vested with sufficient discretion in denying or awarding relief to prevent the remedy from becoming an instrument of fraud or oppression. The prevention of partition upon this ground is a matter of defense to be pleaded and proved as such." (Syl. ¶ 3.)

Such a conclusion recognizes our statutory provision relative to what a petition for the partition of mineral interests must allege. It also, however, permits courts of equity to retain their inherent power to prevent fraud and oppression where that would be the result of partition. It likewise leaves courts free to exercise their equitable powers and to thus deal effectually with a cotenant who may arbitrarily refuse to coöperate for the common good of the cotenancy. It follows that whenever a petition alleges legal grounds for the partition of minerals in place objections thereto, if any, must be alleged and proved as a defense. Moreover, it should also be remembered that, when partition is allowed, courts of this state retain the power to make a just and equitable decree of partition. G. S. 1935, 60-2114, provides:

"The court shall have full power to make any order not inconsistent with the provisions of this article that may be necessary to make a just and equitable partition between the parties, and to secure their respective interests."

See, also, *Fry v. Dewees,* supra, and cases therein cited.

The group of appellees whose contentions we have thus far considered also argues the petition was not drawn upon a single theory and that several causes of action were improperly joined. The first of these contentions, if properly before us, is not sound. The petition clearly sought to have the interests of all parties determined and to have those interests partitioned. Touching the second contention it is difficult to see how there could be a misjoinder of causes of action in this particular case which involves the interests, or claimed interests, of all parties in and to the minerals in place in both tracts of land. In any event there is no cross-appeal by any appellees from the failure of the court to sustain that ground of the demurrer. The result is the point is not properly here for review.

Two other appellees advise they appeared specially by motion to quash the publication service as to them, that the motion was overruled and thereafter they appeared specially by demurrer and challenged the jurisdiction of the court over them personally and over the subject matter of the action. Their demurrer also included alleged misjoinder of causes of action and failure of the petition to state a cause of action. The grounds of their motion and demurrer, insofar as the subject of jurisdiction is concerned, rest upon the alleged insufficiency of the publication service. Whatever might be said concerning the merits of these contentions, the fact remains these appellees have not cross-appealed from the adverse ruling on their motion to quash the service nor have they, or any other appellees, cross-appealed from the failure of the court to sustain other grounds of their demurrers than the ground on which their demurrers were sustained.

The only ruling before us for review is the one brought here by appellant, namely, the order sustaining the general demurrer to his petition. That order has been treated and, as indicated, must be reversed. It is so ordered.

HARVEY, C. J. (dissenting): It is my view that the ordinary rules of partition of real property owned by tenants in common are fundamentally inapplicable to the partition of mineral interests, fractional shares of which are owned by many parties under mineral deeds, and that to so apply them frustrates the real purpose in mind both of the sellers and of the purchasers of such fractional shares. Our former cases, cited in the opinion, tend to that view. I think a

statute could be framed making it possible for the property to be developed in harmony with the purposes of the parties selling or buying such fractional shares, or for the sale of part or all of such shares under specific circumstances which would be more in keeping with the purposes of the parties.