A. A. SEELIGSON, Jr., Plaintiff,
v.
Herman EILERS et al., Defendants.

Civ. No. W–555.

United States District Court
D. Kansas.

March 9, 1955.

Collins, Hughes, Martin & Pringle, Wichita, Kan., for plaintiff.

H. F. Aby, Tulsa, Okl., Adams, Jones, Robinson & Manka, Wichita, Kan., for intervenor, Midstates Oil Corp. and defendants Eilers.

**640**

Hershberger, Patterson, Jones & Thompson, Wichita, Kan., for Warren Bank & Trust Co.

Jesse M. Davis and Gordon Watts, Tulsa, Okl., Kirke W. Dale, Arkansas City, Kan., for Shell Oil Co.

John J. McCurdy, Lincoln, Kan., Jochems, Sargent & Blaes, Wichita, Kan., for Freeda Burger, Mae Simmons and Gladys Burger.

H. D. Oelschlaeger, Plainville, Kan., for Roy J. Gilbert and Mollie Gorman Gilbert.

CHANDLER, District Judge.

The plaintiff is the owner of an undivided term interest in the minerals in place under 320 acres of land in Rooks County, Kansas. The defendants Herman Eilers and his wife are the owners of the land in fee simple, subject to the mineral interest of the plaintiff and various other undivided term mineral and royalty interests, aggregating 5⁄8ths of the mineral estate, owned by other parties joined as defendants in this action. Midstates Oil Corporation intervened in this case as the owner of an oil and gas lease which it acquired from Eilers and his wife after the commencement of this action. In connection with this lease, it was agreed that Midstates would assume defense of this suit on behalf of Eilers and pay all costs and attorneys fees for so long as it retained its leasehold interest.

A test well has never been drilled on the land, and there is no production directly offsetting it. There are some producing wells located within a mile or two of this land, but no one contends that a test well on this land would be anything but a "wildcat" venture.

■ From the record in this case, it is perfectly clear that Eilers has deliberately attempted to "freeze out" the other mineral owners by refusing to lease his interest and thus permit the drilling of a test well on anything like reasonable terms. It is equally clear from Eilers' deposition that he will pursue this course of conduct until the primary terms of the various outstanding mineral and royalty interests have expired in 1957 and 1958 and they have reverted to him. The mineral owners paid approximately $10,000 for their collective interest, which is $3,000 more than Eilers paid for the surface and his present undivided 3⁄8ths interest in minerals.

Naturally, when the mineral and royalty owners purchased their interests they expected, and had the right to expect, a reasonable opportunity to test the property, or have it tested, for commercial deposits of oil or gas. Eilers has denied them this opportunity for several years, by repeatedly refusing to lease his interest unless the lessee would give him the equivalent of a full 1⁄8th of the production rather than his 3⁄8ths proportionate part of the customary 1⁄8th royalty. In addition, Eilers demanded a bonus of $1,200 to $1,500 for executing a lease. These terms are so severe and unreasonable as to effectively prevent the drilling of a wildcat test well.

While the Court is not willing to say that the conduct of the landowner has been fraudulent, it is certainly inequitable. As a result, the plaintiff and those defendants similarly situated as the owners in common of property, with strong equities in their favor, are entitled to partition or such other equitable relief as the Court has jurisdiction to grant.

■ The absolute right of partition among tenants in common of real estate, including the owners of a mineral estate, is recognized both by statute and decision in Kansas. G.S.Kan.1953 Supp., 60–2101 et seq.; Holland v. Shaffer, 162 Kan. 474, 178 P.2d 235, 173 A.L.R. 845; Gillet v. Powell, 174 Kan. 88, 254 P.2d 258. In addition, this jurisdiction recognizes equitable actions for partition of personal property or mixed real and personal property owned in common. Fry v. Dewees, 151 Kan. 488, 99 P.2d 844; Beardsley v. Kansas Natural Gas Co., 78 Kan. 571, 96 P. 859. The rule of law is that in both statutory and equitable partition actions, or those of a mixed character, the Court is governed by equi-

table principles. It has the general power and discretion to settle all questions involved and shape the relief to accomplish justice and prevent the customary remedy of partition from becoming an instrument of fraud or oppression. G.S. Kan.1949, 60–2114; ·Knutson v. Clark, 169 Kan. 205, 217 P.2d 1067; Ames v. Ames, 170 Kan. 227, 225 P.2d 85; Gillet v. Powell, supra.

In his complaint plaintiff asked, in the alternative, for strict partition or for the appointment of a trustee empowered to execute and deliver a full interest lease on customary terms under which the property might be explored for commercial production. In open court and in his brief the plaintiff has offered to take a full interest lease and drill a well himself, or to join with those defendants who may be interested in drilling a well, or to give a lease on customary terms and without a bonus to anyone who would agree to drill a well within such time as to test the property before the various mineral interests expire. This is an offer to do equity which the Court cannot ignore. The landowner has made no such offer, and·has studiously avoided accepting any of the various alternatives proposed by the plaintiff. Likewise, Midstates Oil Corporation apparently does not intend to commit itself to drill a well within the primary term of the outstanding mineral interests.

The rights of the plaintiff and the other mineral owners similarly situated will be adequately protected if they are given a reasonable opportunity to drill the property, or have it drilled, and test it for commercial production. The Court has concluded that in the exercise of its equitable powers it can and should give to every party to this action the opportunity to explore and develop the property on reasonable terms and conditions. The Court has further concluded that this can be most judiciously accomplished directly by the decree, without interjecting the useless formality of appointing a trustee to execute a lease.

Outright partition would,· of course, resolve forever the conflict· between the landowner and the· mineral and royalty owners and probably would afford some measure of relief to the aggrieved parties. It is utterly impossible to divide the mineral estate equitably into separate tracts and, therefore, a partition sale would inevitably result. Because of the speculative nature of the mineral estate, there is no assurance that the price of the market place will be adequate. On partition sale, the landowner as well as the mineral owners might lose their property for a pittance compared to what may ultimately be determined to have been its actual value.

The Court has, therefore, framed and entered a decree by which it has granted to all of the parties the right to explore the property by drilling one or more test wells within a six-month period; and if production is encountered, they are to operate and produce the property in the same manner as an oil and gas lessee for the life of production. The rights conferred under the decree are, of course, subject to the obligation to pay all mineral owners on the basis of the customary ⅛th royalty and are further subject to the terms and conditions of a regular ˋcommercial lease; and for this purpose the Court has ,adopted the terms and provisions of the oil and gas lease executed during the pendency of this action by Eilers to Midstates Oil Corporation.

Midstates and Eilers have been given the first opportunity to elect to acquire the rights granted by the decree for the exploration and development of the property. They can so elect simply by agreeing to drill a test well within the six-month period. If they see fit to do so, they can thus protect, as between them, their respective investments, rights and obligations under the oil and gas lease which they entered into. If they fail to elect to drill a test well, or should they elect to drill and fail to encounter commercial production in any well or wells commenced within the six-month period, then the mineral owners are given the opportunity to elect to explore and· develop the property for a like period of six months. In this manner they can pro-

tect their respective investments in the minerals. If more than one of the mineral or royalty owners elect to drill, they shall take the rights conferred by the decree in proportion to their relative interest in the minerals. If they cannot agree upon a location, they shall drill a location which each shall select.

This decree will avoid the uncertainty and injustice of absolute partition in this case and will, at the same time, grant to everyone concerned a clear and reasonable opportunity to protect their respective interests in the property. Therefore, it is to be preferred over absolute partition; and it is a remedy which the Court, in the exercise of its equitable powers, has the power to render.