No. 21,320.

H. D. HOVER, *Appellant*, v. D. S. MCNEILL and ALICE
MCNEILL, *Appellees*.

### SYLLABUS BY THE COURT.

OIL AND GAS LEASE—*No Conveyance of Real Estate*. The provisions of
an oil and gas lease examined, and held the instrument did not operate
to sever and convey, as real estate, subsurface mineral deposits.

Appeal from Greenwood district court; ALLISON T. AYRES,
judge. Opinion filed February 9, 1918. Reversed.

*Howard J. Hodgson*, of Eureka, for the appellant.

*B. R. Leydig*, and *K. M. Geddes*, both of El Dorado, for the
appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one to establish an oil and gas
lease. The plaintiff was defeated on the ground that the in-
strument under which he claimed was a deed of mineral in
place, which had not been recorded or returned for taxes. The
plaintiff appeals.

The lease reads as follows:

"OIL AND GAS LEASE.

"In consideration of the sum of one dollar and of the covenants and
agreements hereinafter contained, D. S. McNeill and Alice McNeill, his
wife, first parties, hereby grant unto H. D. Hover, second party, success-
ors and assigns, all the oil, gas and minerals in and under the following
described premises, together with the right to enter thereon at all times
for the purpose of drilling or operating for oil, gas or minerals, to erect,
maintain and remove all buildings, structures, pipes, pipe lines and ma-
chinery necessary for the production and transportation of oil, gas or
minerals. Provided: That the first party shall have the right to use
said premises for farming purposes, except such part as is actually
occupied by second party, namely, a lot of land [description].

"The above grant was made on the following terms:

"1st. Second party agrees to begin drilling a well on said premises
within six months from this date, or thereafter pay the first party one
dollar per acre annually until the said well is drilled, or the property
hereby granted is conveyed to the first party. Rental payable quarterly
in advance.

"2nd. Should oil be found in paying quantities upon the premises,
second party agrees to deliver to the first party in tanks or in pipe line

with which it may connect with the well or wells, the one-eighth part of all the oil produced and saved from said premises.

"3rd. Should gas be found, the second party agrees to pay the first party one hundred dollars annually for every well from which gas is used off the premises.

"4th. First party shall be entitled to enough gas free of cost to heat and light one residence on said premises as long as the second party shall use gas from said premises under this contract, but shall lay and maintain the service pipes at his own expense, and use said gas at his own risk. The said party of the second part further to have the privilege of excavating for water and use of sufficient water, gas and oil from the premises herein leased to run the necessary engines for the prosecution of said business without cost to said second party.

"5th. Second party shall bury, when requested to do so by first party, all the gas and oil lines used to conduct gas or oil off said premises and pay all damages to timber and crops by reason of the burying, repairing or removal of lines of pipe over said premises.

"6th. No well shall be drilled nearer than 200 feet to any building on said premises.

"7th. Second party may at any time remove all his property and reconvey the premises hereby granted, and thereupon this instrument shall be null and void.

"8th. A deposit to the credit of the lessor in Eureka Bank, Eureka, Kan., to the amount of any of the money payments herein provided for, shall be a payment under the terms of this lease.

"9th. It is agreed that this lease shall remain in force for the term of ten years from this date, and as long thereafter as oil and gas, or either of them, is found upon said land by party of the second part, their successors or assigns.

"10th. It is further agreed that the lessee, or assigns, may surrender any part of the above security and pay rental only on the number of acres not surrendered.

11th. It is further agreed that if party of the second part fails to comply with the terms of this lease, this lease becomes null and void and reverts back to party of the first part, and shall be released from record without cost to party of the first part."

The statute applies to cases in which subsurface minerals are in legal contemplation severed from the earth in which they are contained and vested in one owner, while the remainder of the real estate is vested in fee in another owner. (Gen. Stat. 1915, § 11280.) The question is, Does the lease effect such a severance? The court is of the opinion it does not.

The provisions of the instrument which indicate an intention to convey mineral deposits or strata are the grant of all the minerals mentioned, and the provisions for reconveyance

in paragraphs 1 and 7. Use of the word "grant," however, is quite inconclusive. The term was appropriate to confer the right to enter, occupy, explore, and operate, and was appropriate to confer title to personal property—oil or gas produced and severed. (2 Blackstone's Commentaries 440, 441.) The provisions for reconveyance are compatible with the notion of release specifically provided for in paragraph 11.

The provisions of paragraphs 9 and 10 are quite inconsistent with the notion of a conveyance of real estate. By paragraph 9 the instrument is made a simple term lease for exploration and production—ten years, and as much longer as oil and gas are found. By paragraph 10 a simple surrender operates to relieve from payment of rent for any portion of the tract. Paragraph 11 carries out the thought of the two preceding paragraphs, and provides for forfeiture and release.

It is suggested that the district court was of the opinion the instrument closely resembled the one which was held to operate as a conveyance of real estate in the case of *Gas Co. v. Oil Co.*, 83 Kan. 136, 109 Pac. 1002. The instrument in the case referred to not only granted, but conveyed and warranted the premises described. The conveyance was extended to heirs as well as successors and assigns. The instrument made a characteristic reservation, and reconveyance was the only method provided for devesting the title of the grantee. Provisions similar to those contained in the last three paragraphs of the instrument here involved were not inserted.

The judgment of the district court is reversed, and the cause is remanded with direction to enter judgment for the plaintiff.