64

No. 34,012

SAMUEL P. HUSHAW, *Appellee*, v. THE KANSAS FARMERS UNION
ROYALTY COMPANY and FLAG OIL COMPANY, *Appellants*.

No. 34,013

GEORGE H. MULCH and CHARLOTTE A. MULCH, *Appellees*, v. THE
KANSAS FARMERS UNION ROYALTY COMPANY and FLAG OIL COMPANY, *Appellants*.

No. 34,014

GERTRUDE M. JACKMAN, *Appellee*, v. THE KANSAS FARMERS UNION
ROYALTY COMPANY and FLAG OIL COMPANY, *Appellants*.

No. 34,015

CHARLES N. JACKMAN, *Appellee*, v. THE KANSAS FARMERS UNION
ROYALTY COMPANY and FLAG OIL COMPANY, *Appellants*.

No. 34,016

BEATRICE L. WILSON, *Appellee*, v. THE KANSAS FARMERS UNION
ROYALTY COMPANY and FLAG OIL COMPANY, *Appellants*.

No. 34,017

WILLIAM CARPENTER and ZELLA O. CARPENTER, *Appellees*, v. THE
KANSAS FARMERS UNION ROYALTY COMPANY and FLAG OIL COMPANY, *Appellants*.

(86 P. 2d 559)

Opinion filed
January 28, 1939.

C. W. Burch, B. I. Litowich, LaRue Royce, L. E. Clevenger, E. S. Hampton, R. E. Haggart, all of Salina, and S. H. King, of Blackwell, Okla., for the appellants.

R. D. Armstrong and D. B. Lang, both of Scott City, for the appellees.

The opinion of the court was delivered by

ALLEN, J.: These cases were consolidated and present the same issue. The record in case No. 34,012 is here considered. This was an action to set aside and cancel an instrument denominated a "mineral deed" and to quiet title. From a judgment in favor of plaintiff, defendants appeal.

The petition alleged that on December 10, 1930, the plaintiff was the owner in fee simple of certain land in Scott county; that on that date plaintiff executed the mineral deed in question to defendants; that the deed was delivered to defendants on December 11, 1930; that the deed was not filed for record in the office of the register of deeds within ninety days thereafter, and that the mineral interest so conveyed has never been listed for taxation. The petition recites that plaintiff tenders a redelivery of the stock certificate received from defendant, The Kansas Farmers' Union Royalty Company; asserts the deed is illegal and void; prays for cancellation, and that his title be quieted.

The deed in question reads as follows:

"KNOW ALL MEN BY THESE PRESENTS, That Samuel P. Hushaw, a single man of Scott City, state of Kansas, for and in consideration of the sum of one dollar, cash in hand paid by THE KANSAS FARMERS' UNION ROYALTY COMPANY and FLAG OIL COMPANY, hereinafter called grantees, and other good and valuable considerations, the receipt of which is hereby acknowledged, have granted, sold, conveyed, assigned, and delivered, and by these presents do grant, sell, convey, assign and deliver unto said grantees an undivided one-half interest in the proportion of three-fourths (¾) and one-fourth (¼) interest therein respectively to the said grantees in and to all of the oil, gas, and other minerals in and under, and that may be produced from the following described lands situated in Scott county, state of Kansas, to wit:

(Description of Land)

together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said lands for oil, gas and other minerals and removing the same therefrom.

"Said land being now under an oil and gas lease, executed in favor of —— not leased —— it is understood and agreed that this sale is made subject to the terms of said lease and covers and includes —— of all of the oil royalty and gas rental or royalty due and to be paid under the terms of said lease insofar as it covers the lands above described.

"It is understood and agreed that one-half of the money or other bonus, which is paid for any future oil and gas lease or leases which may be placed upon the above-described land and one-half of the money rentals which may be paid to extend the terms within which a well may be commenced under the terms of said lease, or leases, shall be paid to and be the property of the grantees.

"To have and to hold the above-described property, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said grantees herein, their respective successors and assigns, for a period of fifty years and as long thereafter as oil and gas may be produced therefrom; and I do hereby bind myself and my heirs, executors and administrators to warrant and forever defend all and singular the said property unto the said grantees herein, their respective successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

"It is hereby further expressly agreed that the grantees accept this conveyance subject to any mortgage loan now existing against the above-described land or any renewal thereof on the same, or on new, modified or qualified terms and conditions and that this grant of mineral and royalty rights shall at all times be subject to inferior and subordinate to any future mortgage loan which may be applied for and placed on the land by the grantor herein, and the same shall have the same force, effect, validity and priority as if executed, delivered and recorded prior to the date of execution, delivery and recording of this mineral grant."

The action is based on our statute G. S. 1935, 79-420, which provides:

"That where the fee to the surface of any tract, parcel or lot of land is in any person or persons, natural or artificial, and the right or title to any minerals therein is in another or in others, the rights to such minerals shall be valued and listed separately from the fee of said land in separate entries and descriptions, and such land itself and said right to the minerals therein shall be separately taxed to the owners thereof respectively. The register of deeds shall furnish to the county clerk, who shall furnish on the first day of March each year to each assessor where such mineral reserves exist and are a matter of record, a certified description of all such reserves: *Provided,* That when such reserves or leases are not recorded within ninety days after execution, they shall become void if not listed for taxation."

In the answer of defendants it is asserted that the statute violates the last clause of section 1 of the fourteenth amendment to the constitution of the United States; that it violates article 11, section 1, and also sections 1, 17 and 18 of the bill of rights of the constitution of the state of Kansas.

The case was tried to the court upon the following agreed statements of facts:

"Come now the plaintiff and defendants, by their attorneys of record, and hereby agree that the facts in the above case are as follows:

"1. The defendant, the Kansas Farmers Union Royalty Company, is a corporation, organized under the laws of the state of Kansas, and its charter was approved and filed with the secretary of state on October 16, 1929. It was organized for the purpose of pooling certain mineral rights and interests. The plan of organizing the pool was that a landowner executed and delivered to the company an instrument, such as that attached to the plaintiff's petition on file herein, covering an undivided one-half of the oil, gas and other min-

erals 'in, under and that may be produced from' the land, in exchange for which the landowner received one share of stock in the company on account of such mineral rights covering each 160 acres so pooled. This was the only manner in which the stock of the company could be issued and sold. In order to finance the organization of the company and the expense of forming the pool, an arrangement was made with one Aldrich Blake, of Oklahoma City, Okla., whereby he paid such organization and pool expense, in consideration for which one-fourth of the mineral rights and interest acquired were conveyed to the defendant, Flag Oil Company. The defendant, The Kansas Farmers Union Royalty Company, could not dispose of the remainder of its property without a referendum of the stockholders. When the mineral deeds were taken instead of the property all being conveyed first to the defendant, The Kansas Farmers Union Royalty Company and then one-fourth of it to the defendant, Flag Oil Company, the two defendants were named as grantees in each deed in the proportions of one-fourth and three-fourths of each undivided one-half interest.

"2. The defendant, The Kansas Farmers Union Royalty Company, is a coöperative mineral resource pooling organization. Its purpose is to pool a portion of the mineral resources of various landowners over a large area and thus increase the likelihood of each member of the pool receiving some portion of the benefit of production in various sections of the state.

"3. Upon December 10, 1930, the plaintiff executed and delivered the deed, a copy of which is attached to his petition, and a written application, a copy of which is attached to the answer of defendants, for one (1) share of the stock of the defendant, The Kansas Farmers Union Royalty Company. That upon December 19, 1930, said application and deed were approved and accepted and the defendant, The Kansas Farmers Union Royalty Company, issued and delivered to the plaintiff certificate No. 766 evidencing one share of its stock in accordance with said application. The mineral deed was duly recorded in the office of the register of deeds of Scott county, upon June 2, 1936, in Book 11 of miscellaneous records, at page 5. At the date of the execution and delivery of the deed, the land involved was unproven and undeveloped territory and there is now no production on or near said land. This action was commenced on or about April 7, 1937. Prior to the commencement of the action plaintiff had made no demand upon defendants for cancellation of the deed, had made no offer to return, or tender of, the stock issued to him as consideration for said deed, and had never notified defendants in any manner that he claimed or intended to claim that the deed or any transaction in connection therewith was invalid.

"4. That defendant Flag Oil Company is a corporation organized under the laws of the state of Oklahoma and duly qualified in Kansas as a foreign corporation. The only connection which it has with the transactions involved is that it acquired title to the one-fourth interest through Aldrich Blake, who paid the organization expense as hereinbefore stated and directed the conveyance of the one-fourth interest to it.

"5. In 1931 defendants submitted to the county clerk of Saline county, Kansas, to be listed for taxation, mineral rights and interests under instruments identical with that attached to plaintiff's petition, and the Saline county taxing authorities held such interest and rights not taxable except (separate) from the land. In February, 1933, defendants submitted identical instruments

to the state tax commission with the request that they be advised as to whether such mineral rights and interests were taxable as realty or as personalty. The attorney for the tax commission under date of February 20, 1933, in a written opinion, advised defendants that such mineral rights and interests were not taxable as realty, but were taxable as personalty under R. S. 79-329 (G. S. 1935, 79-329). That on October 22, 1935, the defendant, The Kansas Farmers Union Royalty Company, submitted to the county clerk of Scott county, Kansas, to be listed for taxation, the mineral rights and interests covered by the deed attached to plaintiff's petition, but same were not taxed for 1935; and were not thereafter taxed for the years 1936 and 1937. That such mineral rights were never in fact listed for taxation in Scott county, Kansas, and no offer was ever made to list the same with the taxing authorities of Scott county prior to said October, 1935."

The trial court found that G. S. 1935, 79-420, "is neither unconstitutional nor invalid for any of the reasons alleged and set forth in the amended answer of defendants," and rendered judgment for plaintiff. This appeal followed.

Defendants contend:

"That the proviso takes appellants' property without compensation, without due process of law or any process of law, and in fact without remedy of any kind or nature whatsoever; that said property is not taken for public purposes and neither the state nor its taxing subdivisions receive any revenue or other benefit from the expropriation of appellants' property, but instead it is given to private citizens, appellees, who voluntarily sold same to appellants for valid consideration.

"The law and the facts in these cases clearly impel the further conclusion that the proviso of the statute directly confiscates appellants' property, and unlawfully discriminates against them in contravention of section 1, article 11, of the constitution, and sections 1, 17 and 18 of the bill of rights of the state of Kansas, and in contravention of the 'due process of law' and 'equal protection of the law' guarantees of the fourteenth amendment to the constitution of the United States."

The statute in question was originally enacted in 1897 (Laws 1897, ch. 244), and has thus been a part of the statute law of this state more than forty years. The validity of the statute was assailed in *Mining Co. v. Crawford County*, 71 Kan. 276, 80 Pac. 601, decided in 1905. It seems many of the contentions now made by defendants were then urged upon the court. The court there stated:

"Plaintiff contends that this act is void because it provides for an unequal and inequitable valuation and assessment. Its counsel construe the act to mean that when the fee to the surface of the land and the minerals thereunder are in one person the minerals are not taxable; that it is only when the fee is in one person and the ownership of the minerals in another that they are subject to taxation. We do not so construe the act. The act in question does not repeal any of the tax laws in existence at the time of its passage, and is not intended as a substitute for any of the provisions of the gen-

eral tax law. In prior laws provisions are found for the valuation and assessment of lands at their full value for the purpose of taxation. Such valuation should include the minerals when they are owned by the person who has the fee to the surface. Such laws were not changed by the present act. Tax laws are the growth of experience and the development of property. Changes must be made from time to time by amendments, repeals, alterations, or additions, as new conditions require, in order that all classes of property may be required to bear a just proportion of the public burden. The act under consideration was passed to meet a newly developed class of property or division of ownership of real estate in Kansas, by which lands came to be divided horizontally, as it were. But for this provision, it would be possible for a very large and highly valuable class of real estate to escape taxation.

"It is also contended that the act contains no provisions for the ascertainment of the value of this class of real estate for the purposes of taxation. This suggestion is equally applicable to the taxation of real estate generally, in which the ascertainment of values is left to the judgment of the assessor. The idea suggests itself that, if the value of the minerals in the earth be ascertainable for the purpose of purchase and sale, it should not be difficult to arrive at their assessable value.

"Contention is made that the owner of the fee paid the taxes on these lands for the year 1898 at their full assessed value and that the assessment of the minerals to the plaintiff is in excess of the fair value of the land. This is a question that does not concern the plaintiff. If the owner of the fee paid taxes in excess of the fair value of the lands he should have applied to the county board of equalization for a rebate." (p. 278.)

The purpose of the statute was again stated in *Gas Co. v. Neosho County*, 75 Kan. 335, 338, 89 Pac. 750, where it was said:

"When such a state of affairs exists the statute regards the owner of the mineral rights as the proprietor of a distinct item of property which is taxable to him apart from that which is taxable to the owner of the tract, parcel or lot in which the minerals are located, and it makes provision for separate lists, entries, descriptions, valuations, etc. The right or title to the minerals, as the statute expresses it, is taxed as realty. The owner is charged with taxes according to the value of his interest, and the owner of the overlying strata is taxed according to the value of the remaining interest in the land. But there must be a severance of the right to the mineral and the nonmineral portions of the land, respectively, before there can be a division in taxation.

"Minerals in place being real estate, the act assumes that instruments creating separate interests in them will be placed of record, but it provides that if such instruments are not recorded within ninety days after execution they shall become void, unless they are brought to the attention of the tax officials so that the purpose of the first part of the section may be accomplished."

Again in *Gas Co. v. Oil Co.*, 83 Kan. 136, 143, 109 Pac. 1002, the validity of the statute was attacked. It was there stated:

"In *Mining Co. v. Crawford County*, 71 Kan. 276, it was suggested that there would be difficulty in enforcing the act and in the assessment of such segregated property, but the suggestion was met by saying that the value of

such property might be ascertained and the assessment made under the general rules governing the assessment of real property. As it is the interest in the land and not the instrument which transfers the interest that is taxed, the indefiniteness which counsel see in the act largely disappears. The lease does not become void by the mere failure to record it, but only when there is the additional delinquency of omitting to list it for taxation. If it is recorded as the statute enjoins, the taxing officer has an opportunity to find and assess the property conveyed by it; and if the owners omit to record the lease and also omit to list it, and thus bring it to the attention of the taxing officials within the time fixed for listing property, the lease then becomes void, and may be so declared by the court at the instance of any interested party. As the owner of the interest in question failed to record the lease within the prescribed time, and also failed to list the property for taxation, the lease was a nullity, and the judgment of the trial court deciding that it was void is affirmed."

Counsel for appellants, after quoting the proviso of the statute, state: "The mandate of the proviso acts automatically and of its own weight. The deed, a solemn obligation between two citizens of the United States based upon a valid consideration, is voided upon the mere failure to record in the time specified, and the failure to list for taxation on or prior to March 1 next following the date of the execution."

The question of what authority a state has over titles to real estate received much consideration in *Arndt v. Griggs,* 134 U. S. 316, 10 S. Ct. 557, 33 L. Ed. 918. It was contended the state had no power to bring a nonresident into its courts by publication to remove a cloud upon title to land. The court said:

"But no such imperfections attend the sovereignty of the state. It has control over property within its limits; and the condition of ownership of real estate therein, whether the owner be stranger or citizen, is subjection to its rules concerning the holding, the transfer, liability to obligations, private or public, and the modes of establishing titles thereto." (p. 320.)

Statutes frequently provide that title to land shall not pass to the transferee until the deed shall be spread of record. The statute of enrollments, the most venerable of the recording acts, so provided. In Jenks' Short History of English Law, page 120, it is said:

"The Statute of Enrollments provided that no 'estate of inheritance or freehold should be made or take effect in any persons, or any use thereof be made, by reason only of any bargain and sale thereof, except the same bargain and sale were made by writing indented, sealed and enrolled' (in one of the King's Courts at Westminster, or with the *Custos Rotulorum* of the county in which the lands lay), within six months after the date of the indenture.

"Whatever the obscurities of style of this famous enactment, it was, obviously, intended to prevent, not merely oral, but secret dealings in land."

A statute in Maryland required the registration of deeds before the title passed. In *Nickel v. Brown,* 75 Md. 172, 23 Atl. 736, the supreme court of that state, in discussing the statute, said:

"These citations from the statute law show the indispensable necessity of the registration of deeds. The recording is the final and complete act which passes the title; until this is accomplished everything else is unavailing. As the recording is necessary to the passing of the title, it must follow as a matter of course that until the recording takes place, the title remains in the grantor. The registered deed shows the title; whatever other rights may arise from the unregistered deed, it cannot effect a transmission of the legal title. . . . The faith and credit which the law intends to give to the registry would be greatly weakened if at any moment there could be a legal title by deed, which did not appear upon the registration records." (pp. 186, 187.)

The legislature may forbid the recording of a deed unless accompanied by a certificate that the taxes due on the land have been paid. (*Van Husan v. Heames,* 96 Mich. 504, 56 N. W. 22.)

A statute of limitations may give title (*Freeman v. Funk,* 85 Kan. 473, 117 Pac. 1024, 46 L. R. A., n. s., 487), and does not constitute the taking of property without due process of law. (*Montoya v. Gonzales,* 232 U. S. 375, 34 S. Ct. 413, 58 L. Ed. 645.) Possession during the full period of limitation destroys the title of the original owner, and amounts to an investiture of title which may be actively asserted in ejectment in all respects as if acquired by deed. (*Freeman v. Funk,* supra; see, also, annotation, 46 L. R. A., n. s., 508.)

In Kansas we have a variety of statutes which require recording of an instrument, or some act precedent to be done or performed, before a right or title will accrue.

Our statute, G. S. 1935, 22-232, provides that "no will shall be effectual to pass real or personal estate unless it shall have been duly admitted to probate or recorded as provided in this act." The words "or recorded" refer to foreign wills, but the devisee under a foreign will cannot recover the land devised unless the will has been recorded. (*Henderson v. Belden,* 78 Kan. 121, 95 Pac. 1055.)

Our statutes provide that all tax deeds not recorded within the time specified therein shall be void. These statutes have been sustained. (*Wagner v. Underhill,* 71 Kan. 637, 81 Pac. 177.)

Under our recording acts every instrument in writing that conveys real estate, or whereby any real estate is affected, may be recorded. Under G. S. 1935, 67-223, no such instrument in writing shall be valid, except between the parties thereto, and such as

have actual notice thereof, until the same shall be deposited with the register of deeds for record. Subsequent transferees for value and without actual notice are given priority over earlier unrecorded conveyances. The holder of the prior conveyance loses his rights, not by forfeiture, but by his own failure to observe the requirements of the recording laws.

Chattel mortgages and conditional sales contracts are governed by very similar statutory provisions. (See G. S. 1935, 58-301 and 58-314.) Claims against the estate of the decedent must be exhibited within one year or be forever barred (sec. 22-702), and no action may be maintained against a city for injury to person or property, unless a claim in writing shall have been filed with the city clerk within three months from the date of the injury (12-105). The constitutionality of this latter statute was sustained in *Davis v. City of El Dorado,* 126 Kan. 153, 267 Pac. 7.

Our statutes, G. S. 1935, 57-101, 57-102 and 57-103, provide that it shall be unlawful to sell any patent right, without first filing with the clerk of the district court copies of the letters patent. duly authenticated. Any written obligation, for which any patent shall form the whole or a part of the consideration, must contain the statement, "Given for a patent right." Certain penalties are imposed for a violation of the law. This statute has been sustained. (*Nyhart v. Kubach,* 76 Kan. 154, 90 Pac. 796; *Allen v. Riley,* 71 Kan. 378, affirmed, *Allen v. Riley,* 203 U. S. 347, 27 S. Ct. 95, 51 L. Ed. 216.)

Our code, section 60-304, provides that actions for the recovery of real property, or for the determination of any adverse claim or interest therein, shall be brought within a time specified after the cause of action shall have accrued. We do not understand that any question is raised as to the validity of statutes of limitations, or of recording acts. In *Vance v. Vance,* 108 U. S. 514, 2 S. Ct. 854, 27 L. Ed. 808, a statute of Louisiana provided that secret liens would cease to have any effect as against third persons unless recorded within a certain time. The supreme court of the United States held the recording act was in the nature of a statute of limitations, and was valid.

Viewed as a recording act or as a statute of limitations we think the validity of the act is beyond the reach of controversy.

Appellants insist, however, that as a taxation measure the classification is so arbitrary, discriminating and unreasonable as to deprive them of their property without due process of law and to withhold from them equal protection of the laws. We think the conten-

tion is without merit. The statute recognizes that there may be a constructive severance of the minerals from the surface of the land. Where the fee to the surface is in one person and the right or title to the minerals is in another, the land and the minerals shall be taxed separately. No distinction is made, whether the owner of such minerals is a resident or nonresident, adult or minor, male or female, citizen or alien. All persons in the class—holders of the mineral rights or title—are upon an exact equality.

A New York statute imposed a stamp tax of two cents on each $100 of face value or fraction thereof, on all sales or transfers of shares of stock in associations or corporations. Nonpayment of the tax was made a misdemeanor. In *People, ex rel. Hatch, v. Reardon,* 184 N. Y. 431,.77 N. E. 970, 8 L. R. A., n. s., 314, 112 Am. St. Rep. 628, 6 Ann. Cas. 515, the court, in passing on the constitutionality of the statute, said:

"*Second.* The classification made by selecting one kind of property and taxing the transfer of that only, is assailed as so arbitrary, discriminating and unreasonable as to deprive certain persons of their property without due process of law and to withhold from them the equal protection of the laws. "All taxation is arbitrary, for it compels the citizen to give up a part of his property; it is generally discriminating, for otherwise everything would be taxed, which has never yet been done, and there would be no exemption on account of education, charity or religion, and frequently it is unreasonable, but that does not make it unconstitutional, even if the result is double taxation. (*People v. Home Ins. Co.,* 92 N. Y. 328, 347.) The right to tax is not granted by the constitution but of necessity underlies it, because government could not exist or perform its functions without it. While it may be regulated and limited by the fundamental law, it exists 'independently of it as a necessary attribute of sovereignty.' . . .

"The legislature has power to classify as it sees fit by imposing a heavy burden on one class of property and no burden at all upon others, the remedy for injudicious action being in the hands of the people, not of the courts. Arbitrary selection and discrimination characterize the history of legislation, both state and national, with reference to taxation, yet, when all persons and property in the same class are treated alike, it has uniformly been sustained both by the state and federal courts. The tax on tobacco, on oleomargarine and the like is not less arbitrary or discriminating than the tax in question. While a tax upon a particular house, or horse, or the houses or horses of a particular man, or on the sale thereof, would obviously invade a constitutional right, still a tax upon all houses, leaving barns and business buildings untaxed, or upon all horses or the sale thereof, leaving sheep and cows untaxed, however unwise, would be within the power of the legislature. This is true of a tax on all houses with 'more than one chimney,' or 'with more than one hearthstone,' or on all race horses. The power of taxation necessarily involves the right of selection, which is without

limitation, provided all persons in the same situation are treated alike and the tax imposed equally upon all property of the class to which it belongs." (pp. 442, 445.)

It is a matter of common knowledge that Kansas contains vast reservoirs of oil and gas. The value of these mineral deposits baffle computation. The purpose of the statute is to place these properties on the tax roll. The method selected by the legislature was to compel disclosure of the true ownership of such minerals as they are from time to time transferred. This end is effectually accomplished by the provision that the instrument of transfer shall be void, unless recorded within ninety days after execution, and if not listed for taxation. Manifestly this is not the forfeiture of a vested title, but a condition precedent to the vesting of title in the transferee. This was the construction of the statute as given in *Gas Co. v. Oil Co.*, supra, and we adhere to the view there expressed.

It is contended the statute does not apply to the instrument in question. We have held otherwise. (*Shaffer v. Kansas Farmers Union Royalty Co.*, 146 Kan. 84, 69 P. 2d 4; *Richards v. Shearer*, 145 Kan. 88, 64 P. 2d 56.)

We are clear the statute offends neither the fourteenth amendment to the constitution of the United States nor the bill of rights of the state of Kansas.

The judgment is affirmed.

ALLEN, J. (dissenting): The statute, G. S. 1935, 79-420, provides that where "the fee to the surface of any tract" is in any person and "the right or title to any minerals" is in another person, the land and the minerals shall be separately taxed. In *Gas Co. v. Neosho County*, 75 Kan. 335, 89 Pac. 750, it was said that the statute the "fee to the surface" is set in opposition to "the right or title to any minerals therein." It was said that "there must be a severance of the right to the mineral and the nonmineral portions of the land." There only could be a severance of the minerals for taxation where there was a grant or exception of the minerals in fee simple.

In *Finch v. Beyer*, 94 Kan. 525, 146 Pac. 1141, there was a grant of all the oil, gas and other minerals. The court said the extent of the grant was limited by the subsequent provision "to a term of five years and as much longer as oil, gas and other minerals are found in paying quantities." The statute did not apply. This case was followed by *Hover v. McNeill*, 102 Kan. 492, 175 Pac. 150, and by *Luman v. Davis*, 108 Kan. 801, 196 Pac. 1078.

In 1917 the legislature enacted sections 79-329 to 79-334, inclusive, providing that oil and gas leases, etc., should be assessed and taxed as personal property. Doubtless the act of 1917 was passed in view of *Gas Co. v. Neosho County,* supra, decided in 1907, and *Finch v. Beyer,* supra, decided in 1915. Under the legislative scheme where there is a constructive severance by a grant or exception of minerals in fee simple, the minerals are to be listed for taxation under our statute, G. S. 1935, 79-420, but leases for production are to be assessed and taxed under the act of 1917.

Did the instrument involved in this lawsuit fall under G. S. 1935. 79-420, or under the act of 1917? In other words, did the so-called "mineral deed" in question operate as a conveyance of the minerals in fee simple absolute?

The title of the instrument is immaterial. *MacLorinan v. Finley,* 124 Kan. 637, 641, 261 Pac. 587. The instrument recites that the grantor does "grant, sell, convey, assign and deliver unto said grantees" an individed one-half interest in all oil, gas and other minerals in and under the land. Stopping here, the operative words are sufficient to pass a fee-simple title. But the instrument did not stop with the operative words quoted, but in the same paragraph gives an easement—the right of ingress and egress "for the purpose of mining, drilling and exploring said lands for oil, gas and other minerals and removing the same therefrom." This language would be appropriate in a lease for production. The conveyance is subject to any existing mortgage on the land "and shall at all times be subject to inferior and subordinate to any future mortgage loan which may be applied for and placed on the land by the grantor herein." This provision is a definite recognition that the title to the oil and gas was to remain in the grantor after the conveyance. The habendum clause limits the transfer "for a period of fifty years, and as long thereafter as oil and gas may be produced." This language is not appropriate to the creation of a fee simple.

The meaning expressed by the language employed in a conveyance is to be derived from reading such conveyance as an entirety. Each sentence or paragraph is a single element in one whole. It is reasonable to infer that their complementary or modifying force upon each other was intended by the conveyor, and this inference will be given effect by the court. When the clauses and paragraphs, read seriatim, involve repugnancies but, read as mutually modifying one another, permit a construction as a consistent whole, the latter

construction is adopted. (Restatement, Property, Tentative Draft No. 7, section 242, comment c.) This was the mode of construction adopted in the Kansas cases above cited. It is the general rule in Kansas. It was applied in the construction of a will in the case of *Johnson v. Muller*, post, p. 128 (this day decided).

Upon what ground was the rule long settled and established by the above-cited Kansas cases departed from in *Richards v. Shearer*, 145 Kan. 88, 64 P. 2d 56, and *Shaffer v. Kansas Farmers Union Royalty Co.*, 146 Kan. 84, 69 P. 2d 4? See, also, *Serena v. Rubin*, 146 Kan. 603, 72 P. 2d 995, and *Sledd v. Munsell*, post, p. 110 (this day decided).

It is not clear whether *Richards v. Shearer*, supra, held a similar instrument created an estate in fee simple subject to a condition subsequent (Restatement, Property, section 45) or an estate in fee simple determinable. (Restatement, Property, section 44.)

It bears no analogy to a common-law estate upon condition subsequent. *Piper v. U. P. Railway Co.*, 14 Kan. 574; *Ritchie v. K. N. & D. Rly. Co.*, 55 Kan. 36, 39 Pac. 718. If it is held to be an estate on condition subsequent, doubtless the landowner would be surprised to know his right of reëntry was nontransferable. (*Piper v. Union Pac. Rly. Co.*, supra.) (Compare *Shell Petroleum Corp. v. Hallow*, 70 F. 2d 811.)

Did the instrument create a determinable fee? An estate in fee simple determinable is created by a limitation which creates an estate in fee simple and provides that the estate shall automatically expire upon the occurrence of a stated event. It arises upon a special limitation, "as long as," "until," etc. Any estate in land may be subject to a special limitation (Restatement, Property, section 23, comment d). But it does not follow that because an estate is determinable as correctly stated in *Shank v. Coal Co.*, 107 Kan. 380, 191 Pac. 482, that it must be classed as a fee simple determinable. If a testator devise land to his wife for life "or as long as she remains single" her life estate terminates on her marriage by virtue of the special limitation, but she does not have a determinable fee.

With deference it is submitted that the instrument before us is merely a lease for production. As it did not pass the fee title to the minerals, it did not fall under our statute, G. S. 1935, 79-420. Therefore, while I agree with all that is said in the majority opinion, yet for the reasons stated I do not think the constitutionality of that statute was involved in this case.